# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **UNITED STATES OF AMERICA, et al.,** | |
| **Plaintiffs,** | No. _3:13-1223-CMC_ |
| *Ex rel.* **[UNDER SEAL],** | **JURY TRIAL DEMANDED** |
| **Plaintiff-Relator,** | **COMPLAINT** |
| **v.** | |
| **[UNDER SEAL],** | |
| **Defendants.** | |

## FILED IN CAMERA AND UNDER SEAL

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| UNITED STATES OF AMERICA, THE STATES OF CALIFORNIA, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, MASSACHUSETTS, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, RHODE ISLAND, TENNESSEE, VIRGINIA, AND THE DISTRICT OF COLUMBIA, | **Case No.** __3:13-1223-CMC__ |
| Plaintiffs, | |
| *Ex rel*. LAURENCE SCHNEIDER, | **JURY TRIAL DEMANDED** |
| Plaintiff-Relator, | **COMPLAINT** |
| v. | |
| J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN CHASE & COMPANY; AND CHASE HOME FINANCE LLC | |
| Defendants. | |

**FILED IN CAMERA AND UNDER SEAL**
**Pursuant to 31 U.S.C. § 3730(b)(2)**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     JURISDICTION AND VENUE ........................................................................5

III.    PARTIES .............................................................................................................6

        A.      Relator ....................................................................................................6

        B.      Defendants .............................................................................................7

IV.     BACKGROUND .................................................................................................7

        A.      Massive Mortgage Wrongdoing By Chase And Other Banks ................7

        B.      The Consent Judgment..........................................................................11

                1.      Consumer Relief Requirements ................................................ 11

                2.      Quality Control Requirements .................................................. 12

                3.      Reporting Requirements ........................................................... 13

V.      CHASE DEFRAUDS THE FEDERAL GOVERNMENT AND  THE STATES
        BY FORGIVING LOANS IT DOES NOT OWN.............................................13

        A.      Relator Purchases Mortgages Owned by Chase ...................................13

                1.      S&A Purchases ......................................................................... 13

                2.      1st Fidelity Purchases .............................................................. 15

        B.      Chase Purports To Cancel Loans It No Longer Owns...........................17

        C.      Chase Admits Misconduct ....................................................................19

        D.      Chase's Distribution of Baseless Forgiveness Letters Is Not Limited to
                Relator....................................................................................................21

        E.      Chase Forgives Mortgages That Defendants Are Ineligible to Receive
                Credit for Under the Terms of the Consent Judgment...........................22

VI.     DEFENDANTS' CONDUCT ALSO VIOLATES THE SERVICING
        STANDARDS PROVISIONS OF THE CONSENT JUDGMENT ..................25

A.      Requirements for Accuracy and Verification of Borrower's Account
        Information ...........................................................................................................25

B.      Anti-Blight Provisions ..........................................................................................26

C.      Chain of Beneficial Interest .................................................................................28

D.      Chase Has Failed To Provide A Single Point Of Contact For Potentially-
        Eligible First Lien Borrowers ..............................................................................29

VII.    DEFENDANTS' CONDUCT VIOLATES THE FALSE CLAIMS ACT ........................33

PRAYER FOR RELIEF ............................................................................................................53

REQUEST FOR A TRIAL BY JURY.........................................................................................54

Plaintiff/Relator Laurence Schneider ("Relator"), by and through his attorneys, Richard A. Harpootlian P.A. and Grant & Eisenhofer P.A., files this complaint concerning Defendants, J.P. Morgan Chase Bank, National Association, J.P. Morgan Chase & Company and Chase Home Finance LLC ("Chase" or "Defendants" or "Company") and alleges as follows:

## I.      INTRODUCTION

1.      Defendants' fraud arises out of its response to efforts by the United States Government ("Government" or "Federal Government") and the States to remedy the misconduct of Chase and other financial institutions who significantly contributed to the consumer housing crisis.

2.      In March 2012, after a lengthy investigation - assisted in no small part by the efforts of *qui tam* plaintiffs under the Federal False Claims Act - the Government filed a complaint against Chase and the other banks responsible for the fraudulent and unfair mortgage practices which cost consumers, the Federal government, and States billions of dollars. Specifically, the Government alleged that Chase, as well as other financial institutions, engaged in improper practices related to mortgage origination, mortgage servicing, and foreclosures, including, but not limited to, irresponsible and inadequate oversight over the banks' quality control standards.

3.      In April 2012, the United States District Court for the District of Columbia approved a settlement between the Federal Government, States, the Defendants and other banks, which resulted in a consent judgment (the "Consent Judgment" or "Agreement"). The Consent Judgment contains, among other things, Consumer Relief provisions. The Consumer Relief provisions require Chase to provide over $4 billion in consumer relief in the form of loan forgiveness and refinancing. Under the Consumer Relief provisions of the Consent Judgment, Chase receives "credits" towards its Consumer Relief obligations by forgiving or modifying

loans it maintains or services under a detailed scheme set forth in Exhibits D and D-1 of the Consent Judgment.   The Consent Judgment also contains Servicing Standard requirements designed to improve upon the lack of quality control and communication with borrowers that caused severe chaos in the housing market to date.

4.      Before the Consent Judgment was entered into, Chase, eager to get distressed assets off its books, sold a significant amount of its mortgage obligations to avoid the burden and bad publicity associated with the residential foreclosure process.   Between 2006 and 2010, Relator bought the rights to thousands of mortgages owned and serviced by Chase.   Numerous borrowers with mortgages Chase had sold to the Relator received loan forgiveness letters from Chase.   Relator, through his contacts at Chase, has been made aware that on September 13, 2012, approximately 30,000 debt forgiveness letters were sent to borrowers by Chase.   On December 13, 2012 another 10,000, and on January 31, 2013 another 8,000 letters were sent.   These letters represented to consumers that, pursuant to the terms of the national mortgage settlement agreement, they were discharged from their obligations to make further payments on the mortgage, which Chase stated it had forgiven.   These letters were not individually reviewed by Chase to ensure that Chase actually owned the mortgages but were instead "robo-signed"; each of the letters sent out was signed by "Patrick Boyle" who identified himself as a Vice President at Chase.

5.      Relator's experience with Chase's baseless forgiveness letters is not unique.   As stated above, beginning in September 2012, Chase, as part of the Consumer Relief provisions of the Consent Judgment, mass mailed loan forgiveness letters to thousands of consumers in order to earn credits under the terms of the Consent Judgment.   However, Chase was not entitled to all

of the credits, because Chase no longer owned many of the loans it forgave or forgave loans that were not eligible for relief.

6.      After Relator brought to Chase's attention that it was purporting to forgive loans that it did not own, and after months of negotiations, Chase gave the Relator two options: 1) Chase would buy-back mortgages that the Relator had purchased, but at a discounted price or 2) send retraction letters to borrowers.   Relator sold back some of the loans that had been fraudulently forgiven by Chase but also retained many of these mortgages. Chase, however, never provided retraction letters to borrowers on the mortgages the Relator retained.   At the same time, based on information and belief, Chase has not submitted to the Government anything correcting Chase's erroneous claim for credit for forgiveness of loans that it did not own and, to this day, claims credit for the loans it forgave despite no longer owning such loans.

7.      The Defendants concealed their conduct and disseminated false and misleading statements to mortgage holders and the U.S. Government and the States which agreed to the Consent Judgment.

8.      Chase's failure to abide by the mandates of the Consumer Relief provisions is not surprising.   Despite the mandate for enhanced Servicing Standards as set forth in Exhibit A to the Consent Judgment, Chase has ignored these requirements and thus has been unable to service with any accuracy the loans it owns and to segregate those which it no longer owns.

9.      Finally, based on Relator's information and experience, Chase maintains policies, the effect of which is to preclude effective relief to those areas most devastated by the housing crisis.   Chase is releasing and fully extinguishing delinquent first lien loans which are secured by low valued properties and pursuing foreclosure of delinquent loans on higher valued properties. Moreover, Chase has failed to abide by the anti-blight and loss mitigation provisions of the

Consent Judgment which require Servicers such as Chase to notify owners and local officials when a home has been identified for first lien extinguishment.  The effect of this conduct has been to **increase** the frequency of blight among America's hardest hit communities.

10.     The U.S. government and numerous states (the "States")[1] agreed to a settlement with Defendants, under the assumption that Defendants would meet their obligations under the Consent Judgment.   The U.S. government and the States are now harmed because they are not receiving the benefit of the bargain they negotiated with the Defendants due to the false claims for credit that have been made by the Defendants.

11.     Pursuant to the Federal Civil False Claims Act, 31 U.S.C. § 3729 et seq. (the "FCA"), similar provisions of the State False Claims Acts, on behalf of the States of California, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Massachusetts, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Rhode Island, Tennessee, Virginia, and the District of Columbia, Relator seeks to recover, on behalf of the United States of America and States, damages and civil penalties arising from Defendants' false certification under its Consent Judgment with the United States and the States, i.e., taking credit pursuant to the terms of the Consent Judgment for mortgage forgiveness on loans Chase no longer owns.

12.     Relator conducted his own investigations and found that the Chase has sent loan forgiveness letters to consumers for mortgages that Chase no longer owns or that were not eligible for forgiveness.  Further, Chase continues to fail to meet its obligations servicing loans

---

[1] States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming, the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia, and the District of Columbia.

and preventing blight as required by the Consent Judgment.  Chase's irresponsible monitoring and servicing of loans and loan forgiveness letters evidence an attempt to quickly satisfy the Defendants' Consumer Relief obligations as cheaply as possible and without actually providing the relief that Chase promised in exchange for the settlement the Defendants reached with the Federal Government and States.

13.     The fraud carried out by the Defendants in this case includes, inter alia:

- Letters to consumers informing each that their mortgage obligations were cancelled;

- Improper servicing of mortgages in violation of the terms of the Consent Judgment;

- Misleading, fraudulent, and inaccurate documentation concerning mortgages purchased by the Relator;

- Based on information and belief, the fraudulent reporting of loan forgiveness and modifications to the Government in connection with satisfaction of the Consumer Relief provisions of the Consent Judgment; and

- Based on information and belief, failure to meet the servicing standards required by the Consent Judgment and misrepresentations to the Government concerning compliance with the servicing standards as required.

## II.     JURISDICTION AND VENUE

14.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732 and supplemental jurisdiction over the counts related to the State False Claims Acts pursuant to 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over the Defendants pursuant to subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) because Defendants transacted business that is the subject matter of this lawsuit in the District of South Carolina and numerous acts proscribed by  31 U.S.C. § 3729 occurred in the District of South Carolina.

16.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants transacted business that is the subject matter of this lawsuit in the District of South Carolina and numerous acts proscribed by 31 U.S.C. § 3729 occurred in the District of South Carolina.

## III.    PARTIES

### A.     RELATOR

17.     Relator is a real estate and finance specialist who resides in Boca Raton, Florida. Relator has direct and personal knowledge of the fraudulent scheme described herein. Relator, as President of S&A Capital Partners, 1st Fidelity Loan Servicing, and Mortgage Resolutions Servicing, has purchased mortgage notes from Chase since 2005. Relator has over 20 years of experience in mortgage loan origination and servicing. In that time, he has built relationships and purchased mortgage loans from over 40 different loss mitigation representatives in three different loss mitigation operating centers (WI, AZ, TX), learning intimate details regarding Chase's loss mitigation activities and gaining perspective on Chase's overall loan servicing policies and procedures.

18.     S&A Capital Partners ("S&A") is a Florida corporation located at 6810 N. State Rd. 7, Coconut Creek, Florida. Relator is the President and managing member of S&A. From 2005 to 2010, S&A purchased First Lien and Second Lien mortgages owned by Defendant Chase.

19.     1st Fidelity Loan Servicing ("1st Fidelity") is a Florida Limited Liability Company located at 6810 N. State Rd. 7, Coconut Creek, Florida. Relator is the President and managing member of 1st Fidelity. From 2007 to 2010, 1st Fidelity purchased First Lien and Second Lien mortgages owned by Defendant Chase.

20.     Mortgage Resolutions Servicing ("Mortgage Resolution") is a Florida Limited Liability Company located 6810 N. State Rd. 7, Coconut Creek, Florida.  Relator is the President and managing member of Mortgage Resolutions.  Mortgage Resolutions purchased a pool of what were purported and represented to be 3,529 First Lien mortgages from Defendant Chase on February 25, 2009.

### B.     DEFENDANTS

21.     Defendant JP MORGAN CHASE BANK, NATIONAL ASSOCIATION and Defendant Chase Home Finance LLC are subsidiaries of Defendant JP MORGAN CHASE & CO ("Chase"). Chase's headquarters is located at 270 Park Avenue, New York, New York. Defendant JP MORGAN CHASE & CO. is a Delaware corporation. On September 25, 2008, Washington Mutual Bank., F.S.B., a federal savings bank headquartered in Henderson, Nevada, failed, and J.P. Morgan Chase Bank, N.A., purchased substantially all of the assets and assumed all deposits and substantially all other liabilities of Washington Mutual Bank., F.S.B., pursuant to a Purchase and Assumption Agreement with the Federal Deposit Insurance Corporation (FDIC) and the FDIC as Receiver for Washington Mutual Bank, F.S.B. The business of J.P. Morgan and its subsidiaries and affiliates includes the origination and servicing of mortgage loans.

## IV.    BACKGROUND

### A.     MASSIVE MORTGAGE WRONGDOING BY CHASE AND OTHER BANKS

22.     On March 12, 2012, a complaint was jointly filed by the United States, 49 individual States,[2] and the District of Columbia against numerous banks and loan servicing

---

[2] Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia,

companies, including Chase, for misconduct related to their origination and servicing of single family residential mortgages (the "National Mortgage Complaint").

23. The National Mortgage Complaint, among other things, alleged that the misconduct of the defendants "resulted in the issuance of improper mortgages, premature and unauthorized foreclosures, violation of service members' and other homeowners' rights and protections, the use of false and deceptive affidavits and other documents, and the waste and abuse of taxpayer funds." The National Mortgage Complaint also contained several allegations concerning unfair and deceptive trade practices supposedly engaged in by Chase and other financial institutions.

24. For example, the National Mortgage Complaint alleged that through loan servicing activities Chase and other banks engaged in unfair and deceptive practices which included:

- failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements;

- charging excessive or improper fees for default-related services;

- failing to properly oversee third party vendors involved in servicing activities on behalf of the Banks;

- imposing force-placed insurance without properly notifying the borrowers and when borrowers already had adequate coverage;

- providing borrowers false or misleading information in response to borrower complaints; and

- failing to maintain appropriate staffing, training, and quality control systems.

---

Wisconsin, and Wyoming; the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia.

25.     The National Mortgage Complaint also alleged that Chase and other banks engaged in unfair and deceptive practices related to loan modification obligations including:

- failing to perform proper loan modification underwriting;

- failing to gather or losing loan modification application documentation and other paperwork;

- failing to provide adequate staffing to implement programs;

- failing to adequately train staff responsible for loan modifications;

- failing to establish adequate processes for loan modifications;

- allowing borrowers to stay in trial modifications for excessive time periods;

- wrongfully denying modification applications;

- failing to respond to borrower inquiries;

- providing false or misleading information to consumers while referring loans to foreclosure during the loan modification application process;

- providing false or misleading information to consumers while initiating foreclosures where the borrower was in good faith actively pursuing a loss mitigation alternative offered by the Bank;

- providing false or misleading information to consumers while scheduling and conducting foreclosure sales during the loan application process and during trial loan modification periods;

- misrepresenting to borrowers that loss mitigation programs would provide relief from the initiation of foreclosure or further foreclosure efforts;

- failing to provide accurate and timely information to borrowers who are in need of, and eligible for, loss mitigation services, including loan modifications;

- falsely advising borrowers that they must be at least 60 days delinquent in loan payments to qualify for a loan modification;

- miscalculating borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;

- misleading borrowers by representing that loan modification applications will be handled promptly when Banks regularly fail to act on loan modifications in a timely manner;

- failing to properly process borrowers' applications for loan modifications, including failing to account for documents submitted by borrowers and failing to respond to borrowers' reasonable requests for information and assistance;

- failing to assign adequate staff resources with sufficient training to handle the demand from distressed borrowers; and

- misleading borrowers by providing false or deceptive reasons for denial of loan modifications.

26.     Additionally, the National Mortgage Complaint alleged that Chase and other banks engaged in unfair and deceptive practices related to foreclosure proceedings including:

- failing to properly identify the foreclosing party;

- charging improper fees related to foreclosures;

- preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments);

- preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robosigning." Where third parties engaged in robosigning on behalf of the Banks, they did so with the knowledge and approval of the Banks;

- executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law;

- misrepresenting the identity, office, or legal status of the affiant executing foreclosure-related documents;

- inappropriately charging servicing, document creation, recordation and other costs and expenses related to foreclosures; and

- inappropriately dual-tracking foreclosure and loan modification activities and failing to communicate with borrowers with respect to foreclosure activities.

27.     In addition to allegations concerning loan servicing, modification, and foreclosure, the National Mortgage Complaint included allegations concerning loan origination. The Government alleged that Chase and other defendants engaged in unfair and deceptive practices by originating mortgages to consumers that were knowingly unaffordable, leading to increased foreclosures throughout the country.

## B.     THE CONSENT JUDGMENT

28.     On February 9, 2012, the Attorney General of the United States announced that the Federal Government and 49 states had reached a settlement agreement with the nation's five largest mortgage services to address mortgage servicing, foreclosure, and bankruptcy abuses.  On April 4, 2012, the United States District Court for the District of Columbia entered a Consent Judgment approving the National Mortgage Settlement, officially making it the single largest consumer financial protection settlement in United States history.

29.     The financial terms of the Consent Judgment require Chase to pay $1,121,188,661 in cash.  *See* Consent Judgment at p. 3, ¶ 3.  This portion of the Consent Judgment was termed the "Direct Payment Settlement Amount." *Id.*  Money paid in this method is to be transferred to an administrator to provide cash payments to borrowers whose homes were sold or taken into foreclosure between January 1, 2008 and December 31, 2011.

### 1.     Consumer Relief Requirements

30.     A significant portion of the Consent Judgment requires Chase to provide over $4 billion of monetary relief to eligible consumers based on specific criteria set out in the Consent Judgment:

> *Consumer Relief.* Defendant shall provide $3,675,400,00 of relief to consumers who meet the eligibility criteria in the forms and amounts described in Paragraphs 1-8 of Exhibit D, and $537,000,000 of refinancing relief to consumers who meet the eligibility criteria in the forms and amounts described in Paragraph 9 of Exhibit D, to remediate harms allegedly caused by the alleged unlawful conduct

11

of Defendant.  Defendant shall receive credit towards such obligation as described
in Exhibit D.

Consent Judgment at p. 4, ¶ 5.

31.     Under the Consent Judgment, a defendant receives credit when the servicer: (1)
allows borrowers to make First Lien Modifications; (2) allows borrowers to make Second Lien
Portfolio Modifications; (3) provides borrowers Enhanced Transitional Funds; (4) facilitates
Short Sales for borrowers; (5) provides borrowers Deficiency Waivers; (6) provides Forbearance
for Unemployed Borrowers; and (7) assists in Anti-Blight efforts.  *See* Consent Judgment at pp.
D1 to D7.

32.     The structure and status of each mortgage determines the amount of credit given
to a bank.  *See* Consent Judgment at pp. D1 to D7 and D1-1 to D1-5.

## 2.     Quality Control Requirements

33.     The Consent Judgment requires that "Defendant shall comply with the Servicing
Standards, attached hereto as Exhibit A, in accordance with their terms and Section A of Exhibit
E, attached hereto."  Consent Judgment at p. 3 ¶ 2.  Specifically, the Consent Judgment requires
Servicers such as Chase to implement various policies and procedures including, but not limited
to:

- Requirements concerning the accuracy and verification of a borrowers' account information (Consent Judgment at A-4, I.B.1);

- Notification requirements by servicers to provide to borrowers (Consent Judgment at A-6, I.B.6-10);

- Information concerning chain of assignment procedures (Consent Judgment at A-8, I. C. 1);

- Quality Assurance requirements of documents filed on behalf of servicers (Consent Judgment at A-11, I.E.1);

- Oversight over third-party providers including due diligence (Consent Judgment at A-12, II.A);

- General loss mitigation requirements including adequate staffing, caseload limits and documentation requirements (Consent Judgment at A-28-29, II.H.1-3,7); and

- Servicer Duties and Prohibitions – measures to deter blight (Consent Judgment at A-40, VIII.A.1-4).

### 3.     Reporting Requirements

34.     Aside from Quality Control provisions, the Consent Judgment also contains reporting obligations owed to both the Federal Government and the States.

35.     The Consent Judgment requires Chase to submit the results of its Compliance Reviews for the Quarter ("Quarterly Report") to the Federal Government.  The Quarterly Report is to include, among other things, "(i) the Metrics for that Quarter; (ii) Servicer's progress toward meeting its payment obligations [and] (iii) general statistical data on Servicer's overall servicing performance…."  Consent Judgment at E-9.

36.     Similarly, the Consent Judgment also requires Chase to "transmit to each state" a report ("State Report") "including general statistical data on Servicer's servicing performance, such as aggregate and state-specific information regarding the number of borrowers assisted and credited activities conducted pursuant to the Consumer Relief Requirements…."  *Id*.

## V.     CHASE DEFRAUDS THE FEDERAL GOVERNMENT AND THE STATES BY FORGIVING LOANS IT DOES NOT OWN

### A.     RELATOR PURCHASES MORTGAGES OWNED BY CHASE

#### 1.     S&A Purchases

37.     Between 2005 and 2010, S&A entered into several agreements to purchase "non performing first and second mortgage loans" from Chase.

38.     On November 22, 2006, S&A purchased the beneficial interest of a $35,730 mortgage from Chase.  The borrowers on the loan were Carol Laug and Garry Keeton ("Laug

Loan"). The Laug Loan was originated on January 24, 2001. The Assignment of Mortgage Agreement was signed by Patricia Lopez, Corporate Executive Officer for Chase.

39.     On September 13, 2007, S&A purchased the beneficial interest of a $16,132 mortgage from Chase. The borrowers on the loan were Allen and Gloria Bradley ("Bradley Loan"). The Bradley Loan was originated on April 26, 2000. The Assignment of Mortgage Agreement was signed by Patricia Lopez, Corporate Executive Officer for Chase and prepared by Launi Solomon, Corporate Executive Officer for Chase.

40.     On September 26, 2007, S&A purchased the beneficial interest of a $29,000 mortgage from Chase. The borrowers on the loan were Frank Demske and Barbara Yockey ("Yockey Loan"). The Yockey Loan was originated on November 20, 2000. The Assignment of Mortgage Agreement was signed by Patricia Lopez, Corporate Executive Officer for Chase and prepared by Launi Solomon Corporate Executive Officer for Chase.

41.     On September 27, 2007, S&A purchased the beneficial interest of a $9,844 mortgage from Chase. The borrowers on the loan were Jerry and Linda Grimm ("Grimm Loan"). The Grimm Loan was originated on March 8, 2001. The Assignment of Mortgage Agreement was signed by Patricia Lopez, Corporate Executive Officer for Chase and prepared by Launi Solomon Corporate Executive Officer for Chase.

42.     On September 18, 2007, S&A purchased the beneficial interest of a $25,000 mortgage from Chase. The borrower on the loan was Randy Frazier ("Frazier Loan"). The Frazier Loan was originated on July 28, 2004. The Assignment of Mortgage Agreement was signed by Patricia Lopez, Corporate Executive Officer for Chase.

43.     On June 24, 2008, S&A purchased the beneficial interest of a $91,000 mortgage from Chase. The borrower on the loan was Diane Busza ("Busza Loan"). The Busza Loan was

originated on December 21, 2005.  The Assignment of Mortgage Agreement was signed by Patricia Lopez, Corporate Executive Officer for Chase and prepared by Launi Solomon, Corporate Executive Officer for Chase.

44.     On March 22, 2010, S&A purchased the beneficial interest of a $20,200 mortgage from Chase.  The borrower on the loan was Dianna Goodwin ("Goodwin Loan"). The Goodwin Loan was originated on June 28, 2004.  The Assignment of Mortgage Agreement was signed and prepared by Launi Solomon, Corporate Executive Officer for Chase.

45.     On July 23, 2010, S&A purchased the beneficial interest of a $79,000 mortgage from Chase.  The borrowers on the loan were Dorothy and Jeffery Vance ("Vance Loan"). The Vance Loan was originated on May 4, 2006.  The Assignment of Mortgage Agreement was signed and prepared by Launi Solomon, Corporate Executive Officer for Chase.

### 2.     1st Fidelity Purchases

46.     Between 2009 and 2010 1st Fidelity entered into several agreements to purchase non performing closed end first and second mortgage loans from Chase.

47.     On October 14, 2009, 1st Fidelity purchased the beneficial interest of a $50,000 mortgage from Chase.  The borrowers on the loan were Jacob Rossatto and Miriam Alvarez ("Rossatto Loan").  The Rossatto Loan was originated on October 6, 2006.  The Assignment of Mortgage Agreement was signed and prepared by Eddie Guerrero, Corporate Executive Officer for Chase.

48.     On October 14, 2009, 1st Fidelity purchased the beneficial interest of a $90,000 mortgage from Chase. The borrower on the loan was Matthew Di Minno ("Di Minno Loan"). The Di Minno Loan was originated on September 20, 2006.  The Assignment of Mortgage Agreement was signed and prepared by Eddie Guerrero, Corporate Executive Officer for Chase.

49.     On October 14, 2009, 1st Fidelity purchased the beneficial interest of a $190,000 mortgage from Chase. The borrowers on the loan were Yvonne and Edward Harrity ("Harrity Loan"). The Harrity Loan was originated on March 8, 2006. The Assignment of Mortgage Agreement was signed and prepared by Eddie Guerrero, Corporate Executive Officer for Chase.

50.     On October 14, 2009, 1st Fidelity purchased the beneficial interest of a $60,400 mortgage from Chase. The borrowers on the loan were Marvin and Cassandra Cornish ("Cornish Loan"). The Cornish Loan was originated on January 27, 2006. The Assignment of Mortgage Agreement was signed and prepared by Eddie Guerrero, Corporate Executive Officer for Chase.

51.     On October 14, 2009, 1st Fidelity purchased the beneficial interest of a $37,000 mortgage from Chase. The borrowers on the loan were Saleh Ahmed and Beverly Ahmed ("Ahmed Loan"). The Ahmed Loan was originated on May 21, 2007. The Assignment of Mortgage Agreement was signed and prepared by Eddie Guerrero, Corporate Executive Officer for Chase.

52.     On October 30, 2009, 1st Fidelity purchased the beneficial interest of a $60,400 mortgage from Chase. The borrowers on the loan were Vito Derosa and Nicolette Derosa ("Derosa Loan"). The Derosa Loan was originated on October 19, 2005. The Assignment of Mortgage Agreement was signed and prepared by Launi Solomon, Corporate Executive Officer for Chase.

53.     On November 4, 2009, 1st Fidelity purchased the beneficial interest of a $25,000 mortgage from Chase. The borrower on the loan was Teresa Hancock ("Hancock Loan"). The Hancock Loan was originated on March 31, 2006. The Assignment of Mortgage Agreement was signed and prepared by Launi Solomon, Corporate Executive Officer for Chase.

54.     On November 10, 2009, 1st Fidelity purchased the beneficial interest of a $44,000 mortgage from Chase.  The borrowers on the loan were William Spence and Laura Spence ("Spence Loan").  The Spence Loan was originated on June 20, 2005.  The Assignment of Mortgage Agreement was signed and prepared by Launi Solomon, Corporate Executive Officer for Chase.

55.     On October 30, 2009, 1st Fidelity purchased the beneficial interests of a $100,000 mortgage from Chase.  The borrower on the loan was Irene Williams ("Williams Loan").  The Williams Loan was originated on January 7, 2005.  The Assignment of Mortgage Agreement was signed and prepared by Launi Solomon, Corporate Executive Officer for Chase.

56.     On January 15, 2010 1st Fidelity purchased the beneficial interest of a $19,950 mortgage from Chase.  The borrowers on the loan were George and Theresa Lawwill ("Lawwill Loan").  The Lawwill Loan was originated on April 5, 2005.  The Assignment of Mortgage Agreement was signed and prepared by Launi Solomon, Corporate Executive Officer for Chase.

57.     Relator negotiated with Chase the purchase of the mortgages referenced above and all those purchased by S&A and 1st Fidelity.

**B.     CHASE PURPORTS TO CANCEL LOANS IT NO LONGER OWNS**

58.     Beginning on or about September 13, 2012, Chase mailed approximately 30,000 letters to borrowers.  Each letter contained the same basic language and stated in part:

> We are writing to let you know that we are cancelling the amount you owe Chase on the loan referenced below, totaling [X] amount, ***as a result of the recent mortgage servicing settlement reached with the states and federal government***.

> This means you will owe nothing more on the loan and your debt will be cancelled. You don't need to sign or return anything for this to happen.

(Emphasis added.)

59.     Each letter included the: 1) name of the borrower; 2) amount left on the loan; and 3) account number assigned to the mortgage.  Each letter was "robo-signed" by Patrick Boyle, Vice President.

60.     Some of the recipients of the September 13 mailing included borrowers who had no relationship with Chase, but rather had their mortgages held by Relator through one of the companies he operates.  Among the mortgages erroneously forgiven by Chase include the Laug Loan, Bradley Loan, Yockey Loan, Grimm Loan, The Frazier Loan, Busza Loan, Goodwin Loan, Vance Loan, Rossatto Loan, Di Minno Loan, Harrity Loan, Cornish Loan, Ahmed Loan, Derosa Loan, Hancock Loan, Spence Loan, Williams Loan, and the Lawwill Loan.

61.     As a result, starting in September 2012, after receiving Chase's baseless forgiveness letters, borrowers informed the Relator that they would no longer be making payments on their mortgages.  For example, Robert Warwick, informed the Relator that he would no longer be making the $520 monthly payments he had been making since October 2009.  Another borrower, Saleh Ahmed, hired an attorney and stated they would call the attorney general if the loan was not released pursuant to the terms of the fraudulent Chase letter he received.

62.     Each of the letters sent by Chase states that forgiveness of the loan at issue is "as a result of the recent mortgage servicing settlement reached with the states and federal government."  As explained above, the reason Chase was forgiving such loans was in order to satisfy the requisites of the Consent Judgment, which required Chase to provide over $4 billion in consumer relief.  Thus, it is believed that Chase has reported forgiveness of these loans in order to receive credit under the Consent Judgment.

### C.   CHASE ADMITS MISCONDUCT

63.     In response to Defendant Chase's baseless forgiveness letters, Relator emailed Omar Kassem, Vice President and Portfolio Manager for Mortgage Banking at Chase.  Relator explained that borrowers whose mortgage notes he held received loan forgiveness letters, all signed by Patrick Boyle as Vice President of Chase even though Chase did not hold the note.

64.     Significantly, Chase did not dispute that it has forgiven loans it does not own. Rather than correcting the misrepresentations to borrowers, Chase offered to buy back the mortgages it sold to S&A and 1st Fidelity.

65.     On December 5, 2012 Chase sent the Relator two letters offering to buy back over 20 mortgages which were improperly forgiven.

66.     These letters stated in relevant part:

> *As part of the recent mortgage servicing settlement reached with the states and federal government*, JPMorgan Chase Bank, N.A. (Chase) elected to participate in a second lien extinguishing program.  Because of this, we sent letters to certain customers notifying them that we were extinguishing their debt with Chase and releasing the associated lien.  *However, we subsequently found that several of your customers received this letter in error because of an incorrect coding entry.*  These customers and their respective loans were identified and are appended to this letter and referenced as "Exhibit A." We apologize for any inconvenience this may have caused you.

(Emphasis added.)

67.     The letter regarding the loans sold to 1st Fidelity acknowledged that Chase had inaccurately and without authorization released the following mortgages purchased by 1st Fidelity from Chase:

| Account Number | Customer Name | Address |
|---|---|---|
| 0672198561 | Jacob Rossatto ("Rossatto Loan") | 1334 W. Smith St. Orlando, FL 32804 |
| 100001410011576330 | George Lawwill ("Lawwill Loan") | 2090 Kylemore Dr, Xenia, OH 45385 |

| | | |
|---|---|---|
| 1000001415010307608 | Matthew Di Minno ("Di Minno Loan") | 5805 Herzman Dr, Evergreen, CO, 80439 |
| 1000002449219758811 | Irene William ("Williams Loan") | 6045 North 40th Street Paradise Valley, AZ 85253 |
| 1009000426370383518 | Yvonne Harrity ("Harrity Loan") | 16445 El Centro St, Hesperia, CA 92345 |
| 1009000426430034553 | James Carr ("Carr Loan") | 10 Royal Palm Way, Boca Raton, FL, 33432 |
| 1009000426430036548 | Robert Warwick ("Warwick Loan") | 801 Vacation Dr, Odenton, MD 21113 |
| 1009000427011269656 | Teresa Hancock ("Hancock Loan") | 204 New Haven Avenue 8E, Derby CT, 06418 |
| 1009000429258879392 | William Spence Jr. ("Spence Loan") | 634 Nesting Lane, Middletown, DE 19709 |
| 1009504292000046714 | Vito Derosa ("Derosa Loan") | 2801 SW Montego Terrace, Stuart, FL, 34997 |
| 1009504292000061358 | Marvin Cornish Jr. ("Cornish Loan") | 14636 London Lane, Bowie, MD, 20715 |
| 1000001416620120938 | Saleh Ahmed ("Ahmed Loan") | 321 S. English St., Oklahoma City, OK, 73160 |

68.     The letter regarding the loans sold to S&A acknowledged that Chase had inaccurately and without authorization released the following mortgages purchased by S&A from Chase:

| Account Number | Customer Name | Address |
|---|---|---|
| 1000001410011640005 | Marty Mitchell ("Mitchell Loan") | 7326 State Route 19 Unit 5215, Mount Gilead, OH, 43338 |
| 1000001411660007717 | Diane Busza ("Busza Loan") | 41 Town House LN, Little Egg Harbor, NJ, 08087 |

| | | |
|---|---|---|
| 100001412610093809 | Dianna Goodwin ("Goodwin Loan") | 5056 Arbor Glen Road, The Colony, TX 75056 |
| 100001414011078913 | Gerard Solberg ("Solberg Loan") | 10 Charleston CT, Chatham, IL 62629 |
| 100001414830009582 | Henri Wright ("Wright Loan") | 1029 Abbott LN, University Park, IL 60466 |
| 100500430521175187 | Carol Laug ("Laug Loan") | 127 Campbell RD, Harrison OH, 45030 |
| 100500439900055099 | Allen Bradley ("Bradley Loan") | 235 North Concept DR, Lima, OH 45807 |
| 100900426360246451 | Randy Frazier ("Frazier Loan") | 2524 Pedergrass LN, Ellenwood, GA, 30294 |
| 100900426370399018 | Dorthy Vance ("Vance Loan") | 40 Leyland LN, Harpers Ferry, WV, 25425 |
| 100900426380031490 | Jerry Grimm ("Grimm Loan") | 7031 Wyandotte DR, Cincinnati, OH 45233 |
| 100500439800892659 | Frank Demske ("Demske Loan") | 265 N. Almont Ave, Imlay City, MI, 48444 |

69.     After months of negotiation between Chase and the Relator, the Relator sold back some of the loans that were falsely forgiven by Chase. Relator, however, declined to sell back several of the loans, including the: Lawwill Loan; Rossatto Loan; Di Minno Loan; Harrity Loan; Warwick Loan; Hancock Loan; Spence Loan; Derosa Loan; Cornish Loan; and the Ahmed Loan.

70.     Only after Relator refused to sell back the Warwick Loan, Cornish Loan and Harrity Loan at less than full value did Chase agree to repurchase these loans for the full balance owed on each mortgage, $428,053.61.

**D.     CHASE'S DISTRIBUTION OF BASELESS FORGIVENESS LETTERS IS NOT LIMITED TO RELATOR**

71.     Chase's pattern of forgiving loans it no longer owns is not limited to those loans it sold to the Relator. Through Relator's extensive experience and relationship with Chase, he was provided a list of mortgages for which Chase provided loan forgiveness letters. Through the Relator's investigation it became apparent that many of the mortgages were forgiven despite the

fact that Chase had sold, or otherwise no longer maintained ownership or servicing rights to the loan.

72.     For example, loan no. 100001411211056278 for Renee Poley at 216 S. Mckenzie Dr., Mukwonago, WI, loan no. 100001414511050194 for Kurt Beisner at 71 Talcott Ave, Crystal Lake, IL and loan no. 100500431820067911 for Arlita Caoagdan at 3938 S. Warsaw St., Seattle, WA all received DOJ Forgiveness Letters for loans which Chase had sold to Blueview Financial in 2003.

73.     Similarly, loan no.100001419800814702 for Gregory Hollingshed at 179 S. 100 East,  Centerville, UT and loan no. 100001419800822169 for Jeffrey Jackson at 4324 S. Elm, Broken Arrow, OK all received DOJ Forgiveness Letters for loans which Chase had sold to Asset Management in 2004.

74.     Additionally, loan no. 100900426370337097 for Bret Jones at 9155 125th St., Seminole, FL and loan no. 100900429258473627 for Michelle Kany at 20000 Mitchell Pl. #79, Denver, CO received DOJ Forgiveness Letters for loans in which Chase had sold their interest to Instant Mortgage in 2009.

####     E.     CHASE FORGIVES MORTGAGES THAT DEFENDANTS ARE INELIGIBLE TO RECEIVE CREDIT FOR UNDER THE TERMS OF THE CONSENT JUDGMENT

75.     Pursuant to the terms of the Consumer Relief requirements of the Consent Judgment:

> A write-down of a second lien mortgage will be creditable where such write-down facilitates either (a) a first lien modification that involves an occupied Property for which the borrower is 30 days delinquent or otherwise at imminent risk of default due to the borrower's financial situation; or (b) a second lien modification that involves an occupied Property with a second lien which is at least 30 days delinquent or otherwise at imminent risk of default due to the borrower's financial situation.

Consent Judgment at p. D-4, 2(b).

76.    Chase provided forgiveness letters to individuals on a second lien mortgage, where the first lien with Chase was current at the time the letters were sent.  No modification had occurred and therefore the second liens were not eligible to be forgiven for credit under the terms of the Consent Judgment.  Relator has identified that the Warrick, Harrity, Hancock, Wright, and Solberg loans fit this category.

77.    Chase also provided forgiveness letters to individuals on their second lien despite the fact that the borrower's first lien was current, which was serviced by lenders other than Chase and thus forgiveness of the mortgage was not eligible to qualify for credit under the terms of the Consent Judgment.  Relator has identified that the Frazier, Grim, Ahmed, and Rossatto loans fit this category.

78.    Similarly, Chase provided forgiveness letters to mortgages with first liens that had not been modified but rather were delinquent, thus making them ineligible for credit if forgiven under the terms of the Consent Judgment.  Relator has identified that the Laug and Mitchell loans fit this category.

79.    Numerous mortgages for which Chase provided debt forgiveness letters were recently foreclosed upon by Fannie Mae.  For example in 2012, Chase sent both Mary K. Gort and Claudene Parker  loan forgiveness letters despite the fact both mortgages had previously been foreclosed upon by Fannie Mae.  This indicates that the underlying first lien mortgages were not recently modified and thus could not qualify for credit under the Consumer Relief Matrix.

80.    Chase provided debt forgiveness letters to individuals who had already paid off their mortgage.  For example in 2012 Chase provided debt forgiveness letters to Richard V. Holland  and Hector Mantos  despite the fact that both loans had been completely paid off.

81.     Defendant Chase also sent debt forgiveness letters to borrowers who had sold their interest in the property.  For example, in 2012, Chase sent Patrick R. O'Connor a debt forgiveness letter despite the fact he had completely sold his interest in the property and was discharged from paying the mortgage.

82.     Moreover, Relator was provided by Chase a partial list of borrowers that received IRS Form 1099C in connection with debt forgiveness.  The documentation of the 1099C forms evidences and supports Chase's intention to use these forgiven mortgages to earn credits under the Consent Judgment.

83.     Numerous other mortgages listed on the 1099C debt forgiveness list had already been foreclosed by Chase or another Company and therefore precluded Chase from applying for any consumer credit. For example, Edgar Morales formerly of 7854 Steddom Dr., Rosemead, CA lost his home to a foreclosure via trustee's deed at public auction to MBA Global LLC on December 27, 2012 and recorded on January 8, 2013 as doc. No. 20130032781 in the official records of Los Angeles County, CA.  Similarly, Chase forgave, Ronald Caparo of his second mortgage formerly of 7832 E. Soaring Eagle Way, Scottsdale, AZ despite the fact that Nationstar Mtg., LLC foreclosed and took ownership of the property by virtue of Trustee's deed on December 5, 2012 which was recorded on December 13, 2012 as doc. No. 1137611 in the official records of Maricopa County, AZ.

## VI.   DEFENDANTS' CONDUCT ALSO VIOLATES THE SERVICING STANDARDS PROVISIONS OF THE CONSENT JUDGMENT

84.     Chase's failure to provide consumer relief to eligible homeowners whose loans it actually owned is not surprising because Chase has failed to implement the Servicing Standard requirements of the Consent Judgment thus exacerbating rather than improving the flow of accurate information not only with Chase but also as between Chase and borrowers.  As a result of Chase's failure to comply with these requirements, erroneous forgiveness letters became commonplace.   Chase failed to report this and numerous other violations of the Consent Judgment to monitors as required by the Consent Judgment:

> So that the Monitor may determine whether Servicer is in compliance with the Servicing Standards and Mandatory Relief Requirements, Servicer shall notify the Monitor promptly if Servicer becomes aware of reliable information indicating Servicer is engaged in a significant pattern or practice of noncompliance with a material aspect of the Servicing Standards or Mandatory Relief Requirements.

Consent Judgment at p. E-7, ¶ 17.

### A.   REQUIREMENTS FOR ACCURACY AND VERIFICATION OF BORROWER'S ACCOUNT INFORMATION

85.     The Consent Judgment states that:

> Servicer shall maintain procedures to ensure accuracy and timely updating of borrower's account information, including posting of payments and imposition of fees. Servicer shall also maintain adequate documentation of borrower account information, which may be in either electronic or paper format.

*      *      *      *

> 8.     Servicer shall take appropriate action to promptly remediate any inaccuracies in borrowers' account information, including:
>
> a.     Correcting the account information;
> b.     Providing cash refunds or account credits; and
> c.     Correcting inaccurate reports to consumer credit reporting agencies.

9.      Servicer's systems to record account information shall be periodically independently reviewed for accuracy and completeness by an independent reviewer.

Consent Judgment at I.B.1. and I.B.8-9.

86.     As set forth above, Chase has distributed loan forgiveness letters to homeowners despite the fact that Chase no longer owns the loan or borrower's ineligibility. This conduct is the result of not having proper procedures in place to maintain accurate records.

87.     For example, on Feb. 25, 2009, Chase purportedly sold to Relator 3,529 first lien mortgages owned by Chase.  After an investigation by Relator, however, it became apparent that these mortgages were improperly and inaccurately categorized and coded by Chase.  Rather than selling Relator 3,529 first lien loans, Chase sold Relator roughly 2,000 unsecured deficiencies which were miscoded as first liens.

## B.      ANTI-BLIGHT PROVISIONS

88.     Pursuant to the terms of the Consent Judgment, Servicers such as Chase are required to take certain measures to deter community blight. For example:

1.      Servicer shall develop and implement policies and procedures to ensure that REO properties do not become blighted.

2.      Servicer shall develop and implement policies and procedures to enhance participation and coordination with state and local land bank programs, neighborhood stabilization programs, nonprofit redevelopment programs, and other anti-blight programs, including those that facilitate discount sale or donation of low-value REO properties so that they can be demolished or salvaged for productive use.

3.      As indicated in I.A.18, Servicer shall (a) inform borrower that if the borrower continues to occupy the property, he or she has responsibility to maintain the property, and an obligation to continue to pay taxes owed, until a sale or other title transfer action occurs; and (b) request that if the borrower wishes to abandon the property, he or she contact Servicer to discuss alternatives to foreclosure under which borrower can surrender the property to Servicer in exchange for compensation.

4.      When the Servicer makes a determination not to pursue foreclosure action on a property with respect to a first lien mortgage loan, Servicer shall:

a. Notify the borrower of Servicer's decision to release the lien and not pursue foreclosure, and inform borrower about his or her right to occupy the property until a sale or other title transfer action occurs; and

b. Notify local authorities, such as tax authorities, courts, or code enforcement departments, when Servicer decides to release the lien and not pursue foreclosure.

Consent Judgment at p. A-40.

89.     As explained above, based on Relator's experience working with Chase, he is aware that Chase maintains a policy of not foreclosing on first lien loans which are secured with little or no value, which are least likely to be repaid and present the highest reputational risk to Chase.  This internal Chase policy is known as the "Alternative Foreclosure Program."

90.     For example, loan no. 1646020495 – Barbara Bergers of 20832 Trebesh Rd. W., Pinckney, MI and loan no. 3017994470 at 19426 Charles St, Detroit MI are both queued to receive debt forgiveness letters despite Chase having no contact with the borrower or government regarding either the pending extinguishment or any knowledge of the occupancy or condition of the property.

91.     Similarly, loan no. 23678477 – Rickey Calloway at 1847 W. Kentucky St., Louisville, KY, loan no. 15895261 of 6200 Melvin Ave, Dayton OH and loan no. 15223423 - Michael Bergy of 426 5th St., Niagara Falls, NY have all been coded for the Alternative Foreclosure Program but have remained in a suspense queue for months despite Chase having no contact with the borrower or government regarding the pending extinguishment nor any knowledge of the occupancy or condition of the property.

92.     Additionally, loan no. 3119245 for Rebecca Burnette of 83 Holland Ave., Jackson, TN, Helane Littles of 33 Langmeyer Ave, Buffalo, NY and Ornage Robertson of 747 Hanley St., Memphis, TN have loans which are sitting in a holding queue "AFPWHS" which indicates Alternative Foreclosure Program Warehouse".  These loans have been deemed to have no value by Chase and have not been assigned to any representative or agency to service for years.

93.     Because of this policy, Chase has merely forgiven loans in many of the hardest hit areas rather than foreclosing.  Despite electing not to pursue foreclosure, Chase has failed to abide by the Consent Judgment's mandate requiring a Servicer who decides not to pursue foreclosure to notify both the borrower and local authorities so that the property can be adequately maintained and not contribute to community blight.  Relator's investigation has revealed that Chase has failed to abide by the anti-blight requirements of the Consent Judgment. As a result, Chase has enhanced blight, rather than limited it, in many of the country's hardest hit areas.

94.     For example, loan no. 3017994470 for Darin Brown of 19426 Charles St., Detroit, MI and  Victor Martinez of 212 Moss St., Reading, PA have been queued for lien release and 1099C without any contact attempted to be  made with the borrower or the government authorities as required by the Settlement.

### C.     CHAIN OF BENEFICIAL INTEREST

95.     Chase's failure to abide by the terms of the Consent Judgment includes refusal to provide necessary documentation concerning assignment and allonges for loans.  Pursuant to the terms of the Consent Judgment, Chase (and all other servicers) are required to maintain specific documentation which includes the note holder status of mortgages as well as the chain of assignment for mortgages it owns.  Specifically the Consent Judgment requires:

In the event that Servicer prepares  or causes to be prepared a lost note or lost assignment affidavit with respect to an original note or assignment lost while in Servicer's control, Servicer shall use good faith efforts to obtain or locate the note or assignment in accordance with its procedures.

96.    Chase has repeatedly refused to provide the Relator the proper assignment history or allonges of numerous mortgages despite multiple requests by the Relator.   Chase has consistently refused to provide this information, stating among other things that "it will not be executing any assignments or allonges[sic]" per an email by Tamika Williams, Vendor Relations Specialist at Chase, dated December 4, 2012.

97.    For example in connection with a mortgage to borrower James and Francine Hamill III [loan #426370386918] at 16031 81st Street, Howard Beach, New York 11414, Chase has failed to produce a proper assignment of mortgage despite the Relator's repeated request to do so for over a year.

98.    Similarly, in connection with a mortgage to Mark Damstra [loan #432633140] at 328 Madison Street, Hoboken, New Jersey and Gregory Wilson [loan #320007429], Chase has failed to produce a proper assignment of mortgage showing chain of ownership.

99.    These servicing standard violations are persistent and continue even today.  For example, in April 2013 in connection with a mortgage with borrower Michelle Zachary located at 1900 King George Lane, Atlanta GA, the Relator has been unable to obtain an allonge to the promissory note so as to assert his beneficial interest in the loan in filing a proof of claiming borrowers Chapter 13 bankruptcy proceedings on a loan he purchased from Chase.

D.    CHASE HAS FAILED TO PROVIDE A SINGLE POINT OF CONTACT FOR POTENTIALLY-ELIGIBLE FIRST LIEN BORROWERS

100.    The Consent Judgment requires that that a "Servicer shall establish an easily accessible and reliable single point of contact ("SPOC") for each potentially-eligible first lien mortgage borrower so that the borrower has access to an employee of Servicer to obtain

information throughout the loss mitigation, loan modification and foreclosure processes."
(Consent Judgment at IV.C.1)

      101.    Specifically the SPOC is primarily responsible for:

      a.  Communicating the options available to the borrower, the actions the borrower must take to be considered for these options and the status of Servicer's evaluation of the borrower for these options;

      b.  Coordinating receipt of all documents associated with loan modification or loss mitigation activities;

      c.  Being knowledgeable about the borrower's situation and current status in the delinquency/imminent default resolution process; and

      d.  Ensuring that a borrower who is not eligible for MHA programs is considered for proprietary or other investor loss mitigation options.

      102.    At a minimum the SPC shall provide the following services to borrowers:

      a.  Contact borrower and introduce himself/herself as the borrower's SPOC;

      b.  Explain programs for which the borrower is eligible;

      c.  Explain the requirements of the programs for which the borrower is eligible;

      d.  Explain program documentation requirements;

      e.  Provide basic information about the status of borrower's account, including pending loan modification applications, other loss mitigation alternatives, and foreclosure activity;

      f.  Notify borrower of missing documents and provide an address or electronic means for submission of documents by borrower in order to complete the loan modification application;

g.  Communicate Servicer's decision regarding loan modification applications and other loss mitigation alternatives to borrower in writing;

h.  Assist the borrower in pursuing alternative non-foreclosure options upon denial of a loan modification;

i.  If a loan modification is approved, call borrower to explain the program;

j.  Provide information regarding credit counseling where necessary;

k.  Help to clear for borrower any internal processing requirements; and

l.  Have access to individuals with the ability to stop foreclosure proceedings when necessary to comply with the MHA Program or this Agreement.

103.  Based on Relator's investigation, Chase consistently fails to provide borrowers with this information and further has been referring potentially eligible first lien loans to collection agencies that cannot provide loan information or modification services.

104.  Chase's failure to keep documentation of key actions related to foreclosure, loan modification, and loan servicing have not just lead to violations of the Consent Judgment but is in itself a direct violation of the Consent Judgment. See Consent Judgment IV.H.4.

105.  For example, Chase acquired EMC Mortgage (the servicing Arm of Bear Sterns), a mortgage company that held thousands of loans.  At least 1,000 loans serviced by EMC were in blighted communities and are currently being serviced by Real Time Resolutions, a collection agency that lacks the information and ability to service these loans properly.  Moreover, Chase failed to import loan information provided by EMC for specific borrowers and therefore has no ability to provide any information to Real Time Resolutions to service the borrower.

106.  Further, the Consent Judgment requires that servicers maintain adequately trained staff to service loans (Consent Judgment at IV.H.):

1.   Servicer shall maintain adequate staffing and systems for tracking borrower documents and information that are relevant to foreclosure, loss mitigation, and other Servicer operations. Servicer shall make periodic assessments to ensure that its staffing and systems are adequate.

2.   Servicer shall maintain adequate staffing and caseload limits for SPOCs and employees responsible for handling foreclosure, loss mitigation and related communications with borrowers and housing counselors. Servicer shall make periodic assessments to ensure that its staffing and systems are adequate.

3.   Servicer shall establish reasonable minimum experience, educational and training requirements for loss mitigation staff.

107.   Chase continues to service thousands of loans improperly making it difficult to believe that the defendants had implemented the standards required by the Consent Judgment.

108.   Further, Chase maintains a policy of sending loans which are "charged off" for accounting purposes to collection agencies which are incentivized on a monthly basis to collect the maximum amount of money from a borrower, not offer any long term sustainable modification strategy.  A typical loan will be assigned to a primary collection agency for approximately 90 days which is compensated 25% of the revenue collected on a contingency basis such as LCS Financial Services, Allied International Credit, Professional Recovery Services and Real Time Resolutions.  After that period of time, the loans are pulled back to Chase then reassigned to a secondary collection agency for approximately 90 days which is compensated 30% of the revenue collected on a contingency basis such as Tate & Kirlin Associates, American Coradius International and GC Services.  After that period of time, the loans are again pulled back to Chase then reassigned to a tertiary collection agency for approximately 120 days which is compensated 40% of the revenue collected on a contingency basis such as such as Tiburon Financial, Focus Receivables Management and Vital Recovery Solutions.   After that period of time, the loans are again pulled back to Chase then reassigned to

a quad collection agency indefinitely which is compensated 45% of the revenue collected on a contingency basis such as Asset Management Outsourcing and Integrity Solution Services.

109.    This policy of moving a borrower's mortgage loan account to potentially four or more different collection agencies undermines the purpose behind the Consent Judgment's SPOC requirements.

## VII.    DEFENDANTS' CONDUCT VIOLATES THE FALSE CLAIMS ACT

110.    Chase has forgiven mortgage loans it does not own in order to meet its obligation to provide over $4 billion in consumer relief under the Consent Judgment.

111.    Chase knew, or reasonably should have known, that mortgages they purported to cancel were not owned by Chase or were otherwise ineligible for assistance under the Consumer Relief provisions and therefore could not be used to satisfy the Defendants' obligations under the Consumer Relief Provisions.

112.    Chase's distribution of erroneous forgiveness letters is the result of its total failure to implement policies and procedures designed to improve the accuracy of information relied upon to manage its loan portfolio.

113.    Based on information and belief, Chase is depriving the Federal Government and the States of benefits owed to them in connection with the Consent Judgment by reporting the forgiveness of loans for which it has no right to do so in order to receive credit under the Consumer Relief Provisions and making misrepresentations concerning Chase's inability to meet the Consent Judgment's Servicing Standard requirements.

## CAUSES OF ACTION

### COUNT I
### Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Against All Defendants

114.     Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

115.     This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended.

116.     As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide the States and the Federal Government with the full benefit of the bargain reached in April 2012.

117.     By reason of the payments and approvals, the United States has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

### COUNT II
### Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Against All Defendants

118.     Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

119.    This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended.

120.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide the States and the Federal Government with the full benefit of the bargain reached in April 2012.

121.    By reason of the payments and approvals, the United States has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT III**
**Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(D)**
**Against All Defendants**

122.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

123.    This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended.

124.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly

presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide the States and the Federal Government with the full benefit of the bargain reached in April 2012.

125.   By reason of the payments and approvals, the United States has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT IV**
**Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(G)**
**Against All Defendants**

126.   Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

127.   This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended.

128.   As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.   To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide the States and the Federal Government with the full benefit of the bargain reached in April 2012.

129.   By reason of the payments and approvals, the United States has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT V**
**Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**Against All Defendants**

130.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

131.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.    Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide the States and the Federal Government with the full benefit of the bargain reached in April 2012.

132.    By reason of the payments and approvals, the United States has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

133.    Through the conduct set forth above, Defendants conspired to commit a violation of  31 U.S.C. § 3729(a)(1)(A), § 3729(a)(1)(B), § 3729(a)(1)(D), and § 3729(a)(1)(G).

**COUNT VI**
**North Carolina False Claims Act,**
**N.C. Gen. Stat. §§ 1-607 (a)(1)-(a)(4), 1-607 (a)(7)**
**Against All Defendants**

134.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

135.    This is a claim for treble damages and civil penalties under the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 *et seq.*

136.     As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide North Carolina with the full benefit of the bargain reached in April 2012.

137.     By reason of the payments and approvals, North Carolina has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

### COUNT VII
**California False Claims Act,**
**Cal. Govt. Code §§ 12651 (a)(1)- (a)(4), 12651 (a)(7)-(a)(8)**
**Against All Defendants**

138.     Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

139.     This is a claim for treble damages and civil penalties under the California False Claims Act, Cal. Gov.t Code § 12650 *et seq.*

140.     As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in

the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide California with the full benefit of the bargain reached in April 2012.

141.    By reason of the payments and approvals,  California has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT VIII**
**Delaware False Claims Act,**
**Del. Code Ann. Tit. 6,§§ 1201 (a)(1)-(a)(4), 1201(a)(7)**
**Against All Defendants**

142.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

143.    This is a claim for treble damages and civil penalties under the Delaware  False Claims Act, Del. Code Ann. Tit. 6, § 1201 *et seq.*

144.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide Delaware with the full benefit of the bargain reached in April 2012.

145.    By reason of the payments and approvals, Delaware has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT IX**
**District of Columbia False Claims Act,**
**D.C. Code Ann. §§ 2-308.14 (a)(1)-(a)(4), 2-308.14 (a)(7)-(a)(8)**
**Against All Defendants**

146.     Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

147.     This is a claim for treble damages and civil penalties under the District of Columbia False Claims Act, D.C. Code Ann. § 2-308.14 *et seq.*

148.     As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide the District of Columbia with the full benefit of the bargain reached in April 2012.

149.     By reason of the payments and approvals, the District of Columbia has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT X**
**Florida False Claims Act,**
**Fla. Stat. Ann. §§ 68.081 (2)(a)-(2)(d), 68.081 (2)(g)**
**Against All Defendants**

150.     Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

151.     This is a claim for treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. Ann. § 68.081 *et seq.*

152.     As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide Florida with the full benefit of the bargain reached in April 2012.

153.     By reason of the payments and approvals, Florida has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XI**
**Georgia False Claims Act,**
**Georgia (O.C.G.A. §§ 23-3-120 to 127)**
**Against All Defendants**

154.     Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

155.     This is a claim for treble damages and civil penalties under the Georgia False Claims Act, O.C.G.A. §§ 23-3-120 to 127.

156.     As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in

the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide Georgia with the full benefit of the bargain reached in April 2012.

157.   By reason of the payments and approvals, Georgia has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XI**
**Hawaii False Claims Act,**
**Haw. Rev. Stat. §§ 661-21 (a)(1)-(a)(4), 661-21 (a)(7)-(a)(8)**
**Against All Defendants**

158.   Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

159.   This is a claim for treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 *et seq.*

160.   As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendans did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide Hawaii with the full benefit of the bargain reached in April 2012.

161.   By reason of the payments and approvals, Hawaii has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XII**
**Illinois Whistleblower Reward and Protection Act,**
**740 Ill. Comp. Stat. §§ 175/3 (a)(1)-(a)(4),  175/3 (a)-(7)**
**Against All Defendants**

162.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

163.    This is a claim for treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. § 175/1 *et seq.*

164.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide Illinois with the full benefit of the bargain reached in April 2012.

165.    By reason of the payments and approvals, Illinois has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XIII**
**Indiana False Claims and Whistleblower Protection Act,**
**Ind. Code §§ 5-11-5.5-2(b)(1)-(b)(4),  5-11-5.5-2(b)(7)**
**Against All Defendants**

166.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

167.    This is a claim for treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, Indiana Code § 5-11-5.5.

168.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide Indiana with the full benefit of the bargain reached in April 2012.

169.    By reason of the payments and approvals, Indiana has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XIV**
**Iowa False Claims Act,**
**Iowa (Iowa Code § 688)**
**Against All Defendants**

170.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

171.    This is a claim for treble damages and civil penalties under the Iowa False Claims and Whistleblower Protection Act, Iowa, Iowa Code § 697.

172.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in

44

the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to Iowa with the full benefit of the bargain reached in April 2012.

173.    By reason of the payments and approvals, Iowa has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XV**
**Massachusetts False Claims Act,**
**Mass. Ann. Laws Ch. 12, §§ 5(B)(1)-(B)(4), 5(B)(8)**
**Against All Defendants**

174.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

175.    This is a claim for treble damages and civil penalties under the Massachusetts False Claims Act, Mass. Ann. Laws Ch. 12, §§5(B)(1) *et seq.*

176.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide Massachusetts with the full benefit of the bargain reached in April 2012.

177.    By reason of the payments and approvals, Massachusetts has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XVI**
**Minnesota False Claims Act,**
**Minn. Stat. §§ 15C.02(a)(1)-(a)(4), 15C.02(a)(7)**
**Against All Defendants**

178.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

179.    This is a claim for treble damages and civil penalties under the Minnesota False Claims Act, Minn. Stat. § 15C.01 *et seq.*

180.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide Minnesota with the full benefit of the bargain reached in April 2012.

181.    By reason of the payments and approvals, Minnesota has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XVII**
**Montana False Claims Act,**
**Mont. Code Ann. §§ 17-8-403(1)(a)-(1)(d), 17-8-403(1)(g)-(h)**
**Against All Defendants**

182.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

183.    This is a claim for treble damages and civil penalties under the Montana False

Claims Act, Mont. Code Ann. § 17-8-401 *et seq.*

184.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners

that their loans were being forgiven pursuant to the Consent Judgment despite the fact that

Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To

benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly

presented or caused to be presented a false or fraudulent claim for credit under the terms of the

Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in

the Consent Judgment and by failing to accurately report their non-compliance with the servicing

standards, Chase has made misrepresentations to the government and failed to Montana with the

full benefit of the bargain reached in April 2012.

185.    By reason of the payments and approvals, Montana has been damaged, and

possibly continues to be damaged, in an amount yet to be determined.

**COUNT XVIII**
**Nevada False Claims Act,**
**Nev. Rev. Stat. §§ 357.040 (1)(a)- (1)(d), 357.040 (1)(g)-(1)(h)**
**Against All Defendants**

186.    Relator realleges and incorporates herein by reference all the allegations set forth

in paragraphs 1 through 113 of this Complaint.

187.    This is a claim for treble damages and civil penalties under the Nevada False

Claims Act, Nev. Rev. Stat. § 357.010 *et seq.*

188.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners

that their loans were being forgiven pursuant to the Consent Judgment despite the fact that

Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To

benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly

presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide Nevada with the full benefit of the bargain reached in April 2012.

189.    By reason of the payments and approvals, Nevada has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XIX**
**New Jersey False Claims Act,**
**N.J. Stat. §§ 2A:32 C-3 (a)- (d); 2A:32 C-3 (g)**
**Against All Defendants**

190.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

191.    This is a claim for treble damages and civil penalties under the New Jersey False Claims Act, N.J. Stat. § 2A:32 C-1 *et seq.*

192.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide New Jersey with the full benefit of the bargain reached in April 2012.

193.    By reason of the payments and approvals, New Jersey has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XX**
**New Mexico False Claims Act,**
**N.M. Stat. Ann. §§ 27-14-3 (A)(1)-(A)(4), 27-14-3 (A)(7)-(A)(8)**
**Against All Defendants**

194.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

195.    This is a claim for treble damages and civil penalties under the New Mexico False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*

196.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide New Mexico with the full benefit of the bargain reached in April 2012.

197.    By reason of the payments and approvals, New Mexico has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XXI**
**New York False Claims Act,**
**N.Y. State Fin. L. §§ 189.1.(a)-1.(d), 189.1.(g)**
**Against All Defendants**

198.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

199.    This is a claim for treble damages and civil penalties under the New York False Claims Act, N.Y. St. Fin. L. § 187 *et seq.*

200.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide New York with the full benefit of the bargain reached in April 2012.

201.    By reason of the payments and approvals, New York has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XXII**
**Rhode Island False Claims Act,**
**R.I. Gen. Laws§§ 9-1.1-3(a)(1)-(a)(4), 9-1.1-3(a)(7)**
**Against All Defendants**

202.    Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

203.    This is a claim for treble damages and civil penalties under the Rhode Island False

Claims Act, R.I. Gen. Laws §9-1.1-1 *et seq.*

204.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners

that their loans were being forgiven pursuant to the Consent Judgment despite the fact that

Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To

benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly

presented or caused to be presented a false or fraudulent claim for credit under the terms of the

Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in

the Consent Judgment and by failing to accurately report their non-compliance with the servicing

standards, Chase has made misrepresentations to the government and failed to provide Rhode

Island with the full benefit of the bargain reached in April 2012.

205.    By reason of the payments and approvals, Rhode Island has been damaged, and

possibly continues to be damaged, in an amount yet to be determined.

### COUNT XXII
**Tennessee Fraud Against Taxpayers Act,**
**Tenn. Code Ann. §§ 4-18-101, *et seq.***
**Against All Defendants**

206.    Relator realleges and incorporates herein by reference all the allegations set forth

in paragraphs 1 through 113 of this Complaint.

207.    This is a claim for treble damages and civil penalties under the Tennessee Fraud

Against Taxpayers Act**,** Tenn. Code Ann. §§ 4-18-101, *et seq.*

208.    As alleged in paragraphs 1-113 Defendants falsely represented to homeowners

that their loans were being forgiven pursuant to the Consent Judgment despite the fact that

Defendants did not own the loans or that the borrowers were ineligible to receive relief.  To

benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly

presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide Tennessee with the full benefit of the bargain reached in April 2012.

209.   By reason of the payments and approvals, Tennessee has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**COUNT XXIV**
**Virginia Fraud Against Taxpayers Act,**
**Va. Code Ann. §§ 8.01-216.3 (A)(1)- (A-4), 8.01-216.3 (A)(7)**
**Against All Defendants**

210.   Relator realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 113 of this Complaint.

211.   This is a claim for treble damages and civil penalties under the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216 *et seq.*

212.   As alleged in paragraphs 1-113 Defendants falsely represented to homeowners that their loans were being forgiven pursuant to the Consent Judgment despite the fact that Defendants did not own the loans or that the borrowers were ineligible to receive relief.   To benefit from its baseless forgiveness letters, Defendants and its agents and employees knowingly presented or caused to be presented a false or fraudulent claim for credit under the terms of the Consent Judgment.   Additionally, by failing to abide by the servicing standard requirements in the Consent Judgment and by failing to accurately report their non-compliance with the servicing standards, Chase has made misrepresentations to the government and failed to provide Virginia with the full benefit of the bargain reached in April 2012.

52

213.    By reason of the payments and approvals, Virginia has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests that judgment be entered against Defendants, ordering that:

a.      Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et seq.*;

b.      Defendants pay an amount equal to three times the amount of damages the United States, the States of California, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Massachusetts, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Rhode Island, Tennessee, Virginia, and the District of Columbia have sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $5,000, and not more than $10,000 for each violation of 31 U.S.C. § 3729 and similar provisions of the State False Claims Acts;

c.      Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) and similar provisions of the State False Claims Acts;

d.      Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d) and similar provisions of the State False Claims Acts;

e.      The United States, the States of California, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Massachusetts, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Rhode Island, Tennessee, Virginia, and the District of Columbia and Relator be granted all such other relief afforded by law as the Court deems appropriate;

## REQUEST FOR A TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff/Relator hereby demands a trial by jury.

Dated: May 6, 2013                    **RICHARD A. HARPOOTLIAN P.A.**


                                      */s/ Richard A. Harpootlian*
                                      Richard A. Harpootlian
                                      Bar No. 1730
                                      1410 Laurel Street
                                      Post Office Box 1090
                                      Columbia, SC 29202
                                      Telephone: 803-252-4848
                                      Facsimile: 803-252-4810
                                      rah@harpootlianlaw.com

                                      Reuben A. Guttman
                                      GRANT & EISENHOFER P.A.
                                      1920 L Street, N.W., Suite 400
                                      Washington, DC 20036
                                      Telephone: 202-386-9500
                                      Facsimile: 202-350-5908
                                      rguttman@gelaw.com

                                      Jay W. Eisenhofer
                                      James J. Sabella
                                      GRANT & EISENHOFER P.A.
                                      485 Lexington Avenue, 29th Floor
                                      New York, NY 10017
                                      Telephone: 646-722-8500
                                      Facsimile:  646-722-8501
                                      jeisenhofer@gelaw.com
                                      jsabella@gelaw.com

                                      Jonathan Kass
                                      Justin K. Victor
                                      GRANT & EISENHOFER P.A.
                                      123 Justison Street
                                      Wilmington, DE 19801
                                      Telephone: 302-622-7053
                                      Facsimile:  302-622-7055
                                      jvictor@gelaw.com

Keith Singer
Keith Singer P.A.
55 NE 5th Ave. #400
Boca Raton, FL 33432
Telephone 954-462-3300
Facsimilie 954-337-0876
ksinger13@aol.com

*Attorneys for Plaintiff-Relator Laurence Schneider*